IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CR-111-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BRIAN JARRELL SCOTT, | ) | |
| Defendant. | ) | |

On July 27, 2020, Brian Jarrell Scott ("Scott" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582), filed exhibits in support, and moved for appointment of counsel [D.E. 555].[1] On December 28, 2020, Scott moved for return of property [D.E. 582]. On December 29, 2020, Scott moved to strike separate status designation [D.E. 583]. On January 5, 2021, the government responded in opposition to Scott's motion to return property [D.E. 586]. As explained below, the court denies Scott's motions.

I.

On December 5, 2016, with a plea agreement, Scott pleaded guilty to conspiracy to distribute and possession with intent to distribute 28 grams or more of cocaine base (crack) and a quantity of cocaine (count one) and possession of a firearm in furtherance of a drug trafficking crime (count two). See [D.E. 18, 202, 203, 204]. On April 5, 2017, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 269, 281, 282,

---

[1] The court appointed counsel to determine whether Scott qualified to seek a reduction of sentence [D.E. 569]. Thus, Scott's motion to appoint counsel is moot.

385]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Scott's total offense level to be 21, his criminal history category to be III, and his advisory guideline range to be 60 months' imprisonment on count one and 60 months' consecutive imprisonment on count two. See [D.E. 282] 1; [D.E. 385] 5. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Scott to 60 months' imprisonment on count one and 60 months' consecutive imprisonment on count two, for a total sentence of 120 months' imprisonment. See [D.E. 281] 2; [D.E. 385] 6–21. Scott did not appeal.

The court denies Scott's motion to strike [D.E. 583]. The court entered a "keep separate" designation to prevent the Bureau of Prisons ("BOP") from housing Scott with his co-conspirators in order to minimize future criminal behavior among Scott and his co-conspirators. Moreover, for the reasons stated in the government's response, the court denies Scott's motion to return property as meritless under Federal Rule of Criminal Procedure 41(g). See [D.E. 582, 586].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the BOP could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence

under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[2] Application note 2 states

---

[2] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not

---

        (III) experiencing deteriorating physical or mental health because of the aging process,

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)   Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)   Family Circumstances.—

    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

Case 5:16-cr-00111-D   Document 596   Filed 04/20/21   Page 4 of 8

updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Scott states that he submitted a request for compassionate release to the Warden but received no response. See [D.E. 555] 11–14; [D.E. 555-1]. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[3] Accordingly, the court addresses Scott's claim on the merits.

Scott seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Scott cites the COVID-19 pandemic, his family history of hypertension and heart disease,

---

[3] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

and his asthma, eczema, and history of staph infections and surgeries. See [D.E. 555] 3–4, 16, 34–35. Scott also cites the conditions at FCI Gilmer, his rehabilitation efforts, and his release plan. See id. at 4, 16–17, 22–31, 36–38; [D.E. 555-2]; [D.E. 555-3].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Scott states that he suffers from asthma and eczema and has a history of staph infections and surgeries, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Scott serves his sentence. Accordingly, reducing Scott's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Scott's medical history, Scott's rehabilitation efforts, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Scott's sentence. See Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Scott is 35 years old and engaged in serious criminal conduct in 2016. See PSR ¶¶ 15–28. Scott acted as a street level dealer and distributor for a large drug trafficking organization in Wake County and Durham County, North Carolina. See id. ¶¶ 15–21. Scott is accountable for 84.95 grams of cocaine and 43 grams of crack. See id. ¶ 21. Scott also carried a firearm during his drug

6

trafficking activities, acting as a "shooter" for the organization. See id. ¶¶ 18, 20–21. Moreover, Scott is a violent recidivist with convictions for carrying a concealed weapon (two counts), simple assault, resisting a public officer, breaking and entering, driving while license revoked (three counts), possession of drug paraphernalia, possession with intent to sell and deliver Schedule II controlled substances, and maintaining a motor vehicle for the purpose of keeping and selling controlled substances. See id. ¶¶ 30–40. Nonetheless, Scott has taken some positive steps while incarcerated. See [D.E. 555] 30–31, 36–37; [D.E. 555-2]; [D.E. 555-3].

The court has considered Scott's exposure to COVID-19, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Scott's arguments, and the need to punish Scott for his serious criminal behavior, to incapacitate Scott, to promote respect for the law, to deter others, and to protect society, the court declines to grant Scott's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Scott's request for home confinement, Scott seeks relief under the CARES Act. See [D.E. 555]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No.

7

4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Scott's request for home confinement.

II.

In sum, the court DENIES Scott's motion for compassionate release [D.E. 555], motion for return of property [D.E. 582], and motion to strike [D.E. 583], DENIES AS MOOT Scott's motion to appoint counsel [D.E. 555], and DISMISSES Scott's request for home confinement.

SO ORDERED. This 20 day of April 2021.

JAMES C. DEVER III
United States District Judge